UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

MARY ROE, as Guardian for JANE
DOE,

          Plaintiffs,

        v.

CITY OF SPOKANE, WASHINGTON, a
municipal corporation, including
its Fire Department and its
Police Department; DANIEL ROSS
and JANE DOE ROSS, husband and
wife; DETECTIVE NEIL GALLION,
SGT. JOE PETERSON; and JOHN AND
JANE DOES 1-10, husbands and
wives,

          Defendants.

No. CV-06-0357-FVS

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS

**THIS MATTER** came before the Court for a telephonic hearing on the Defendants' motions to dismiss on June 23, 2008.  J. Scott Miller appeared on behalf of the Plaintiffs.  Christian J. Phelps appeared on behalf of the Defendants, Daniel and Jane Doe Ross.  Rocco N. Treppiedi appeared on behalf of the City of Spokane and the remaining Defendants (collectively, "the City Defendants").

The Plaintiffs seek to recover damages for alleged deprivations of their Constitutional rights pursuant to 42 U.S.C. § 1983 ("Section 1983").  Specifically, they allege that the Defendant, Daniel Ross, infringed upon their constitutional rights by sexually assaulting Jane

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
DISMISS- 1

Doe on the night of February 10, 2006.  They further allege that Detective Gallion and Sergeant Peterson deprived them of their right to access to the courts and their right to equal protection under the law by deleting photographs the alleged sexual assault.  The Plaintiffs also seek to recover under state law theories of assault and battery, sexual exploitation of a child, negligent supervision, negligent investigation, spoilation of evidence, outrage, and negligent infliction of emotional distress.  The City Defendants move to dismiss all of the Plaintiffs' claims.  Mr. Ross joins in the City Defendants' motion to dismiss the Section 1983 claims.

The Court finds that the Plaintiffs have stated a claim for relief under Section 1983 based upon the actions of Mr. Ross.  The Amended Complaint alleges that Mr. Ross used his position as a firefighter to lure Ms. Doe to the fire station and sexually assault her.  It further alleges that this misconduct was the result of the City of Spokane's failure to supervise Mr. Ross.  The Plaintiffs have thus alleged that Mr. Ross acted under color of law and pursuant to a custom or policy.  They may continue to pursue their Section 1983 claim to the extent that it is premised upon the actions of Mr. Ross.

The Plaintiffs have not, however, alleged that Detective Gallion and Sergeant Peterson were acting pursuant to an official custom or policy when they deleted the allegedly incriminating photographs.  The Plaintiffs' claim for denial of equal protection under the law must accordingly be dismissed as against the City.  The Plaintiffs may, however, continue to pursue this claim against Detective Gallion and Sergeant Peterson.  Given that the Plaintiffs currently have state law

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS- 2

claims pending before this Court, they can not show that they have been deprived of access to the Courts.  Their claim for denial of access to the courts brought under Section 1983 will accordingly be dismissed without prejudice.

Under Washington law, an employee necessarily acts outside the scope of his or her employment in pursuing sexual gratification.  The City Defendants can therefore not be held liable for the actions of Mr. Ross under a theory of respondeat superior.  The Plaintiffs' claims for assault and battery and sexual exploitation of a child will therefore be dismissed as against the City Defendants.  Likewise, the Plaintiffs' claims for outrage and negligent infliction of emotional distress will be dismissed against the City Defendants to the extent that they are premised upon the actions of Mr. Ross.

The tort of negligent investigation is not cognizable against police officers under Washington law.  The Plaintiffs' negligent investigation claim will therefore dismissed.  Likewise, Washington has yet to recognize a cause of action for the destruction of evidence.  The Plaintiffs' claim for spoilation will also be dismissed.  Given that neither the investigation of the sexual assault nor the destruction of the photographs is actionable in itself, the Plaintiffs may not rely upon either of these facts in support of a claim for negligent infliction of emotional distress.  The negligent infliction of emotional distress claim will accordingly be dismissed.

**BACKGROUND**

At the time of the events that gave rise to the present action, Jane Doe was a minor.  The Defendant, Daniel Ross, was a firefighter

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS- 3

employed by the City of Spokane ("the City").  Am. Compl. ¶ 3.2.  On February 10, 2006, Mr. Ross was on duty at Fire Station No. 17.  Ms. Doe went to Fire Station No. 17 at Mr. Ross' invitation.  Am. Compl. ¶ 3.9.  Mr. Ross sexually assaulted Ms. Doe and took explicit photographs of her.  Am. Compl. ¶¶ 3.13, 3.15.  After the police interviewed Ms. Doe about the incident, they concluded that she had consented to the sexual encounter.  Detective Gallion subsequently directed Mr. Ross to delete the photographs.  Am. Compl. ¶¶ 3.20-3.25.

**DISCUSSION**

**I.  LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a trial court may dismiss a complaint that fails to state a claim upon which relief can be granted.  Such dismissal is proper "only when there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Siaperas v. Mont. State Comp. Ins. Fund*, 480 F.3d 1001, 1003 (9th Cir. 2007).  For the purposes of a 12(b)(6) motion, all factual allegations set forth in the complaint are taken as true and construed in the light most favorable to the plaintiff.  *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).  The Court must give the plaintiff the benefit of every inference that reasonably may be drawn from well-pleaded facts.  *Tyler v. Cisneros*, 136 F.3d 603, 607 (9th Cir. 1998).  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1979, 167 L. Ed 929, 945 (2007)(internal citations omitted).  "In practice, a complaint must .

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS- 4

. . . contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.*, at 1968-69, 167 L. Ed 2d at 944 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)(ellipsis and emphasis in original).

However, the Court is not required to accept as true conclusory allegations, legal characterizations, unreasonable inferences, or unwarranted deductions of fact. *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996). Nor may the court "look beyond the complaint" to additional facts alleged in the plaintiff's memorandum opposing dismissal. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)). Moreover, "[f]acts raised for the first time in plaintiff's opposition papers should not be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice." *Broan v. Bogan*, 320 F.3d 1023, 1027 n. 1 (9th Cir. 2003)(citing *Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137-38 (9th Cir. 2001)).

## II.  SECTION 1983

In the Ninth Circuit, a plaintiff must prove two elements to state a cause of action under Section 1983: "1) that the Defendants acted under color of state law; and 2) that the Defendants caused them to be deprived of a right secured by the Constitution and laws of the United States." *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997). The Plaintiffs seek to premise Section 1983 liability on two distinct sets of actions: the sexual assault allegedly committed by Mr. Ross and the deletion of the photographs by Detective Gallion and

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS- 5

Sergeant Peterson.  Each set of facts is considered separately below.

### A.    Actions of Mr. Ross

### 1.    Have the Plaintiffs alleged that Mr. Ross was acting under color of law at the time of the alleged sexual assault?

It is well established that "[t]here is no 'rigid formula' for determining whether a state or local law official is acting under color of state law." *Anderson* v. *Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006).  The acts of a public official are not automatically considered to be under color of law merely because he or she committed the act while on duty and in uniform.  *Van Ort v. Estate of Michael Stanewich*, 92 F.3d 831, 838 (9th Cir. 1996)(citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990)).  Rather, a government employee "acts under color of state law while acting in his [or her] official capacity or while exercising his [or her] responsibilities pursuant to state law." *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000).  A public employee may also act under color of law when he or she takes an action in pursuit of a government objective, pretends to act under color of law, or uses his or her government position to "exert influence and physical control." *Van Ort*, 92 F.3d at 838.

In reviewing its Section 1983 case law, the Ninth Circuit recently identified three requirements that must be satisfied in order to demonstrate that an **off-duty** police officer acted under color of law:

1) The action at issue was 'performed while the officer is acting, purporting, or pretending to act in the performance of his or her official duties';

2) Second, the officer's pretense of acting in the performance of his duties must have had the purpose and effect of influencing the behavior of others; and

3) The action at issue was related in some meaningful way either to the officer's governmental status or to the performance of his duties.

*Anderson*, 451 F.3d at 1068-69 (citing *McDade*, 223 F.3d at 1140)).

The Ninth Circuit has not explicitly applied these requirements to the acts of public employees who were on duty at the time of the conduct at issue. Rather, the Ninth Circuit has found that an on-duty employee acted under color of law when he used his position as a refugee counselor to exert influence over individuals who contacted him for assistance in obtaining employment. *Vang v. Toyed*, 944 F.2d 476, 480 (9th Cir. 1991). It has also found that an employee of a District Attorney's Office acted under color of law when she accessed a government database during working hours using a computer and a password issued by her employer. *McDade,* 223 F.3d at 1140. The court explained, "Because Ms. West's status as a state employee enabled her to access the information, she invoked the powers of her office to accomplish the offensive act." *Id.*

The Court finds that the Amended Complaint alleges that Mr. Ross was acting under color of law at the time of the alleged sexual assault. As the Plaintiffs have observed, Mr. Ross was both on-duty and in uniform at the time of the alleged sexual assault. Like the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS- 7

employee in *McDad*e, he allegedly used computers and an internet connection provided by the City to contact Ms. Doe.  The Defendants are correct that none of these factors is determinative.  However, taken together, they weigh in favor of the conclusion that Mr. Ross was acting under color of law.

The deciding factor is the allegation that Mr. Ross used his status as a firefighter to lure Ms. Doe to the fire station.  The Amended Complaint alleges, "Plaintiff Jane Doe's purpose was to meet Defendant Ross in person for the first time and have a tour of Fire Station No. 17."  Am. Compl. ¶ 3.10.  It further alleges, "Plaintiff Jane Doe recognized that Defendant Ross was a person with special authority because of his position as a uniformed firefighter, which reduced, interfered with and/or prevented her capacity to resist Defendant Ross' sexual assault."  *Id.* ¶ 3.16.  Like the employee in *McDade*, Mr. Ross thus "invoked the powers of [his] office to accomplish the offensive act."

The Defendants' argument that sexual assault is unrelated to Mr. Ross' firefighting duties is unpersuasive.  The defendant in *Vang* was a refugee counselor accused of sexually assaulting the immigrants he was assigned to advise.  The assaults were clearly unrelated to the functions of his position, but the Ninth Circuit held that he acted under color of law because he "used his government position to exert influence and physical control over these plaintiffs in order to sexually assault them."  944 F.2d at 480.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS- 8

Nor do the cases cited by the Defendants compel a finding that Mr. Ross did not act under color of law.  As a primary matter, both *Delcambre v. Delcambre* and *Bailey v. Prince George's County* originated outside the Ninth Circuit.  More importantly, in both cases, the tortious conduct was the result of a private dispute that escalated while one or both of the parties was on duty.  In neither case was there an allegation that the defendant used his or her official position to facilitate the assault.  *See Bailey v. Prince George's County*, 34 F. Supp. 2d 1025, 1027-28 (D. Md. 1999)(holding that police officer did not act under color of law in exchanging heated words with administrative assistant and temporarily blocking her exit because "the dispute was nothing more than a personal if heated office dispute"); *Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir. 1981)(upholding finding that defendant police chief did not act under color of law when an "altercation arose out of an argument over family and political matters" while the defendant was on duty).

**2.    Have the Plaintiffs alleged that a custom or policy of the City was the "moving force" behind the alleged sexual assault?**

A local government body, such as a municipality, can not be held liable under Section 1983 for the unconstitutional acts of its officers or employees under the theory of respondent superior.  *Monell v. New York Dep't of Social Serv.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035-36, 56 L. Ed. 2d 611, 635 (1978).  Rather, a municipality may only be held liable under Section 1983 if the plaintiff's injuries are

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS- 9

traceable to one of the municipality's policies or customs.  *Id*.  "A failure to train or supervise can amount to a 'policy or custom' sufficient to impose liability on [a local government]." *Anderson*, 451 F.3d at 1070 (citing *City of Canton v. Harris*, 489 U.S. 378, 389-90, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).

To establish liability against the City, the Plaintiffs must show that (1) an employee of the City violated plaintiffs' rights; (2) the City had customs or policies that amounted to deliberate indifference; and (3) these policies were the moving force behind the employee's violation of Plaintiffs' constitutional rights, in the sense that the City could have prevented the violation with an appropriate policy. *Gibson v. County of Washoe*, 290 F.3d 1175, 1194 (9th Cir. 2002).  A municipality's failure to train or supervise its employees may expose it to Section 1983 liability "where the failure to train 'amounts to deliberate indifference to the rights of persons' with whom those employees are likely to come into contact." *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001)(quoting *Harris*, 489 U.S. at 388-89, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989)).

The Supreme Court has prohibited federal courts from imposing heightened pleading requirements on complaints alleging municipal liability under Section 1983. *Lee*, 250 F.3d at 679 (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S. Ct. 1160, 122 L. Ed. 2d 517)).  In the Ninth Circuit, "a claim of municipal liability under 1983 is sufficient to

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS- 10

withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007) (quoting *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002)).

Following *Leatherman*, the D.C. Circuit held that a Section 1983 complaint alleging that a local government failed to properly train or supervise its employees will survive a 12(b)(6) motion so long as it contains both allegations of misconduct and allegations of failure to train. *Atchinson v. District of Columbia*, 73 F.3d 418, 423 (D.C. Cir. 1996). The *Atchinson* opinion is consistent with the Supreme Court's recent reformulation of the 12(b)(6) standard in *Bell v. Twombly* in that it explicitly states, "a section 1983 complaint alleging municipal liability must include some factual basis for the allegation of a municipal policy or custom." *Id.* at 422.

The Court finds that the Plaintiffs have sufficiently alleged the existence of a "policy" to survive the Defendants' 12(b)(6) motion. The Amended Complaint alleges that Mr. Ross assaulted Ms. Doe, resulting in damages. Am. Compl. ¶¶ 4.6, 4.8. It also alleges that the City failed to properly supervise Mr. Ross. Am. Compl. ¶ 4.3(f). Finally, it alleges that Mr. Ross engaged in other misconduct on multiple occasions, accessing "a sexually explicit website on at least 22 occasions while on duty." Am. Compl. ¶ 3.7. Under *Leatherman* and *Atchinson*, no more is required.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS- 11

It is true, as the Defendants argue, that a plaintiff can not demonstrate the existence of a policy or custom by relying upon a single isolated incident of misconduct. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444-45 (9th Cir. 1989). The Court is persuaded, however, that at the pleading stage, a plaintiff whose Section 1983 claim is premised upon a failure to train or supervise may satisfy the pleading requirements of Rule 8(a) by alleging "both a failure to train and an unusually serious instance of misconduct that, on its face, raises doubts about a municipality's training policies." *Atchinson*, 73 F.3d at 423. The Plaintiffs have alleged that the City's failure to supervise Mr. Ross resulted in a sexual assault upon Ms. Doe. To the extent that their Section 1983 claim is premised upon the conduct of Mr. Ross, it will not be dismissed.

**B.   Actions of Detective Gallion and Sergeant Peterson**

> **1.   Have the Plaintiffs Alleged that a Custom or Policy of the City Was the "Moving Force" Behind the Deletion of the Photographs?**

The Court finds that the Plaintiffs have failed to allege that a custom or policy of the City was the "moving force" behind the actions of Detective Gallion and Sergeant Peterson. The amended complaint alleges that the officers engaged in misconduct by deleting the photographs. It does not, however, allege that the City failed to properly train or supervise them. Rather, the Amended Complaint alleges that Detective Gallion and Sergeant Peterson deleted the photographs in violation of the City's policies. Am. Compl. ¶ 3.23.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS- 12

Citing *Kibbe v. City of Springfield,* the Plaintiffs argue that a municipality that has delegated the responsibility for charging decisions to officers in the field may be held liable for the decisions of such officers.  Here, the City clothed Detective Gallion and Sergeant Peterson with the authority to determine whether a crime had been committed.  However, the Amended Complaint does not allege that the City made any extraordinary delegation of its charging authority.  As the Defendants have argued and the Court has explained, a plaintiff may not rely upon facts alleged for the first time in his or her responsive briefing to defeat a motion to dismiss.  Moreover, *Kibbe* does not establish that the delegation of charging authority constitutes a policy for the purposes of Section 1983.  The Plaintiffs have thus failed to plead that Detective Gallion and Sergeant Peterson were acting pursuant to an official policy or custom when they deleted the photographs.  Their Section 1983 claim against the City must accordingly be dismissed to the extent that it is premised upon the actions of Detective Gallion and Sergeant Peterson.

**2.   Is there a right to an "adequate" police investigation?**

The Defendants argue that the Plaintiffs' Section 1983 claim should be dismissed to the extent that it relies upon the actions of Detective Gallion and Sergeant Peterson because Ms. Doe has no constitutional right to an adequate investigation.  It is true, as a general principle, that an inadequate investigation does not provide a basis for a Section 1983 claim unless the investigation infringed upon

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS- 13

another constitutionally protected right.  *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985).  However, the Plaintiffs have cited two substantive rights of which Ms. Doe was allegedly deprived: access to the courts and equal protection.  *Gomez* therefore does not provide an independent basis for dismissal of the Plaintiffs' Section 1983 claim against the individual Defendants.

### 3.    May the Plaintiffs premise their Section 1983 claim on destruction of evidence?

Citing *Johnson v. Washington Metropolitan Area Transit Authority*, 764 F. Supp. 1568 (D.D.C. 1991), the Defendants argue that the Plaintiffs may not, as a matter of law, premise their Section 1983 claim upon the destruction of evidence.  *Johnson* is not applicable to the issue before this Court because it concerned the admissibility of evidence rather than the availability of a claim based on the destruction of evidence.  764 F. Supp. at 1579.  Controlling authority establishes that a Section 1983 claim will, in fact, lie when the destruction or concealment of evidence has deprived an individual of his or her constitutional right of access to the courts.  *Christopher v. Harbury*, 536 U.S. 403, 413-14, 122 S. Ct. 2179, 2186, 153 L. Ed. 2d 413, 423 (2002); *Delew v. Wagner,* 142 F.3d 1219, 1222 (9th Cir. 1998). The Plaintiffs may therefore rely upon the destruction of the photographs in pursuing their Section 1983 claim.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS- 14

**4.    Have the Plaintiffs alleged a cause of action for denial of access to the courts?**

In order to prevail on a Section 1983 claim premised on denial of access to the courts, a plaintiff must prove that the defendant's actions actually rendered "any available state court remedy ineffective." *Delew*, 143 F.3d at 1222-23 (quoting *Swekel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th Cir. 1997)).  In *Delew*, the Ninth Circuit found that the plaintiffs had alleged a cognizable claim for denial of access to the courts.  143 F.3d at 1222.  The court nevertheless remanded the action with instructions to dismiss the access to courts claim without prejudice, explaining that "because the Delews' wrongful death action remains pending in state court, it is impossible to determine whether" the alleged cover-up had in fact rendered their state court remedies ineffective." *Id.* at 1223.  This rule appears to have survived the Supreme Court's decision in *Christopher*.  In *Christopher,* the Supreme Court specifically acknowledged the Sixth and Ninth Circuits' rule that "an actual attempt to sue is a prerequisite" to an access to the courts claim.  536 U.S. at 414 n.9, 122 S. Ct. at 423 n.9, 153 L. Ed. 2d at 423 n.9.  It assumed without deciding that such Circuit court cases were correct.  *Id.*

The Court finds *Delew* to be controlling in this case.  Like the plaintiffs in *Delew*, Ms. Roe and Ms. Doe have state law claims pending before a court.  Only if these claims prove to be ineffective will

their access to courts claim lie.  The Plaintiff's Section 1983 claim for denial of access to the courts will therefore be dismissed without prejudice.

### 5.    Have the Plaintiffs alleged a claim for denial of equal protection under the law?

The equal protection clause of the Fourteenth Amendment serves to "secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074-75, 141 L. Ed. 2d 1060, 1063 (2000). Consistent with this principle, an individual may sue for denial of equal protection as a "class of one." *Id.*  In order to succeed upon such a claim, the plaintiff must prove that he or she has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *The Fishing Co. of Ala. v. United States*, 195 F. Supp. 2d 1239, 1254 (W.D. Wash. 2002)(internal citation and quotation marks omitted).

The Plaintiffs argue that the Defendants deprived Ms. Doe of equal protection under the law by intentionally treating her differently from other similarly situated crime victims.  While the Defendants argue that the complaint does not explain the basis for the Plaintiffs' equal protection claim, they have neither argued nor demonstrated how this alleged deficiency deprived them of notice under

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS- 16

Rule 8(a).  The Defendants' contention that the City has taken no action against the Plaintiffs is no more persuasive.  The Amended Complaint alleges that the Individual City Defendants engaged in at least one harmful affirmative action: deletion of the photographs. The Plaintiffs' claim against the individual City Defendants for deprivation of equal protection under the law will therefore not be dismissed.

## III. QUALIFIED IMMUNITY

Under the doctrine of qualified immunity, government officials are immune from civil liability for performing discretionary functions unless their actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Morgan v. Morgensen*, 465 F.3d 1041, 1044 (9th Cir. 2006)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).  However, the defense of qualified immunity is unavailable when an official has been sued in his or her official capacity, "Because the action against the agency officials is, in essence, an action against the agency."  *Estate of Abdollahi v. County of Sacramento,* 405 F. Supp. 2d 1194, 1212 (E.D. Cal. 2005)(citing *Kentucky v. Graham*, 473 U.S. 159, 167, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)).

In view of the Plaintiffs' admission that they are suing the individual City Defendants in their official capacity, rather than

their personal capacity, qualified immunity is not an issue in this case.

## IV. VICARIOUS LIABILITY FOR SEXUAL ASSAULT AND SEXUAL EXPLOITATION OF A CHILD

Under Washington law, an employer may be held liable for the intentional tort or criminal conduct of an employee if the tort or crime was committed while the employee was acting within the scope of his or her employment. *Atkins v. Bremerton Sch. Dist.*, 393 F. Supp. 2d 1065, 1069 (W.D. Wash. 2005)(citing *Robel v. Roundup Corp.*, 148 Wn.2d 35, 52-53, 59 P.3d 611 (Wash. 2002)).  In determining whether an employee was acting within the scope of his or her employment, "The proper inquiry is whether the employee was fulfilling his or her job functions at the time he or she engaged in the injurious conduct." *Robel*, 148 Wn.2d at 53, 59 P.3d at 621.  As a general rule, this inquiry is left for the finder of fact.  However, "certain fact patterns may, as a matter of law, relieve the employer of liability." *Thompson v. Everett Clinic*, 71 Wn. App. 548, 552, 860 P.2d 1054, 1057 (Wash. Ct. App. 1993).  Washington courts have consistently held that acts taken in pursuit of "personal sexual gratification" fall outside the scope of employment.  *See C.J.C. v. Corp. of Catholic Bishop of Yakima*, 138 Wn.2d 699, 718-19, 985 P.2d 262, 272 (Wash. 1999)(holding churches could not be held liable for acts of sexual assault committed by priests); *Niece v. Elmview Group Home*, 131 Wn.2d 39, 58, 929 P.2d 420, 431 (1997)(holding nursing home not liable for sexual assault of

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS- 18

resident by an employee); *Thompson*, 41 Wn. App. at 554, 860 P.2d at 1058 (holding clinic not liable for sexual assault of patient by a doctor); *Blenheim v. Dawson & Hall, Ltd.*, 35 Wn. App. 435, 440, 667 P.2d 125, 129 (Wash. Ct. App. 1983)(holding employer not liable for sexual assault of entertainer hired to perform at company Christmas party).

Under this line of cases, it is clear that Mr. Ross was not acting within the scope of his employment at the time that he allegedly assaulted Ms. Doe.  Like the defendants in *C.J.C., Niece, Thompson,* and *Blenheim*, Mr. Ross acted in pursuit of his own sexual gratification rather than in an attempt to fulfill the functions of his job.  Consequently, the City Defendants can not be held liable for the tortious actions of Mr. Ross under a theory of respondeat superior.

It is true, as the Plaintiffs argue, that the assault was committed in the workplace while Mr. Ross was on duty.  Nevertheless, the *Robel* decision illustrates that the pursuit of sexual gratification is "an exceptional circumstance," that can take on-the-job conduct outside the scope of employment.  In *Robel*, the Supreme Court of Washington held that the employer could be held vicariously liable for verbal harassment perpetrated by its employees. The court found that the employees had verbally assaulted the plaintiff while acting within the scope of their employment because none of the employees "left their job stations or neglected their

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS- 19

assigned duties to launch the verbal attacks on Robel."  148 Wn.2d at 54, 59 P.3d at 621.  Even with this finding, the court made a point of stating, "Nor was the employees' conduct in this case directed toward deriving personal sexual gratification, an exceptional circumstance that could have taken the conduct outside the scope of their employment."  *Id.*

The cases cited by the Plaintiffs in support of their argument that Mr. Ross was acting within the scope of his employment as a matter of law because he was "on call" are inapplicable.  Both *Frese v. Snohomish County* and *Iverson v. Snhomish County* dealt with the question of whether employees were entitled to additional compensation during their lunch periods because they continued to be "on call" during this time.  129 Wn. App. 659, 665-66, 120 P.3d 89, 93 (Wash. Ct. App. 2005); 117 Wn. App. 618, 623, 72 P.3d 772, 774 (Wash. Ct. App. 2003).  Neither addresses the meaning of "within the scope of employment" for tort law purposes.

Given that the Plaintiffs' claims against the City Defendants for assault and battery and sexual exploitation of a child are premised on vicarious liability, these claims must be dismissed as against the City Defendants.  The Plaintiffs may continue to pursue these claims against Mr. Ross.

## V.    NEGLIGENT SUPERVISION

An employer has a limited duty to foreseeable victims to "prevent the tasks, premises, or instrumentalities entrusted to an employee

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS- 20

from endangering others." *Niece*, 131 Wash.2d at 48, 929 P.2d at 426. Consequently, an employer may be held liable for the negligent acts of an employee acting outside the scope of his or her employment under a negligent supervision theory when two elements are present.  First, the plaintiff must show that the employer knew, or, through the exercise of reasonable care, should have known that the employee was unfit.  Second, the plaintiff must show that failing to supervise the employee was a proximate cause of the plaintiff's injuries. *Betty Y. v. Al-hellou*, 98 Wash. App. 146, 149 (Wash. Ct. App. 1999); *Crisman v. Pierce County Fire Prot. Dist. No. 21*, 115 Wash. App. 16, 20 (2002).

## A.   Mr. Ross' Conduct

Giving the Plaintiffs the benefit of every inference that may be drawn from the complaint, the Court finds that the Plaintiffs have alleged a cause of action for negligent supervision of Mr. Ross.  The Plaintiffs allege that the City "should have knowing [sic] through the exercise of proper management, that Defendant Ross had previously engaged in inappropriate conduct while on duty."  Am. Compl. ¶ 4.3(b). They have also alleged that the City was negligent in failing to supervise Mr. Ross and that, as Ms. Doe entered the fire station, "other fire department personnel who were present ignored the fact that Defendant Ross was escorting a minor girl into the building." *Id*. ¶ 3.12.  These allegations support the inference that the City's failure to supervise Mr. Ross was a proximate cause of the sexual assault.  The Defendants' argument that the Plaintiffs have failed to

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS- 21

allege that the City knew Mr. Ross had dangerous tendencies is thus unavailing.  The Plaintiff's negligent supervision claim will not be dismissed to the extent that it is premised upon the conduct of Mr. Ross.

**B.    Detective Gallion and Sergeant Peterson's Conduct**

The Court finds that the Plaintiffs have failed to allege a cause of action for negligent supervision of Detective Gallion and Sergeant Peterson.  The Amended Complaint alleges that these officers either deleted or allowed Mr. Ross to delete photographs of significant evidentiary value.  It does not, however, allege that they were unfit to perform their duties.  Nor does it allege that the City knew, or should have known through the exercise of ordinary care, of any such unfitness.  The Amended Complaint thus does not contain "direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  *Twombly*, 127 S. Ct. at 1968-69, 167 L. Ed 2d at 944.

The Plaintiffs argue that neither Detective Gallion nor Sergeant Peterson had any prior experience in investigating violations of Washington's statute prohibiting sexual exploitation of children, RCW § 9.68A.  Their inexperience allegedly led them to destroy photographic evidence in violation of "all applicable standards of care."  However, as the Defendants have argued, these allegations were made for the first time in the Plaintiff's responsive briefing.  They do not appear anywhere in the Amended Complaint.  Under *Schneider* and

*Broan*, the Court may not consider them in ruling on the present motion.  The Plaintiffs' claim for negligent supervision of Detective Gallion and Sergeant Peterson will therefore be dismissed.

## VI.  NEGLIGENT INVESTIGATION

As a general matter, negligent investigation is not an actionable tort in the state of Washington.  *Pettis v. State*, 98 Wash. App. 553, 558, 990 P.2d 454, 456 (Wash. Ct. App. 1999).  While Washington has recognized a cause of action for the negligent investigation of child abuse allegations, *Donohue v. State*, 135 Wash. App. 824, 850 n.18, 142 P.3d 654, 667 n. 18 (Wash. Ct. App. 2006), negligent investigation remains inactionable in a number of other contexts.  *See Lesley v. Wash. State Dept. of Soc. & Health Serv.*, 83 Wn. App. 263, 273, 921 P.2d 1066, 1072 (Wash. Ct. App. 1996)(citing cases).  Washington courts have repeatedly held that a claim of negligent investigation is not cognizable against police officers.  *See Laymon v. Wash. State Dept. of Natural Res.*, 99 Wn. App. 518, 530, 994 P.2d 232, 239 (Wash. Ct. App. 2000)(citing cases).  This Court will not create a cause of action against police officers when the State of Washington has declined to do so.  The Plaintiffs' claim for negligent investigation under Washington law will accordingly be dismissed.

## VII. SPOILATION

Under Washington law, the destruction or alteration of evidence may create a rebuttable presumption that the evidence was unfavorable

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS- 23

to the party that altered or destroyed it. *Henderson v. Tyrrell*, 80 Wn. App. 592, 606-07, 910 P.2d 522, 532 (Wash. Ct. App. 1996)(quoting *Pier 67 v. King County*, 89 Wn.2d 379, 385-86, 573 P.2d 2 (Wash. 1977)). Washington courts have consistently treated the availability of this presumption as an evidentiary matter. *See Homeworks Constr., Inc. v. Wells*, 133 Wn. App. 892, 898, 138 P.3d 654, 657 (Wash. Ct. App. 2006)(describing the Henderson court's "evidentiary conclusion"); *Henderson*, 80 Wn. App. at 605, 910 P.2d at 531 (explaining, "The problem [of spoilation] historically has been treated as an evidentiary matter.") While Washington has not foreclosed the possibility of recognizing a claim for spoliation, such a cause of action has not yet been recognized. To the extent that the Plaintiffs seek to allege an independent state law claim for spoliation of evidence, this claim must be dismissed.

**VIII.    NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

The tort of negligent infliction of emotional distress has five elements in the state of Washington. First, the plaintiff must prove the four traditional elements of negligence: "duty, breach, proximate cause, and damage or injury." *Snyder v. Med. Serv. Corp.*, 125 Wash. 2d 233, 243, 35 P.3d 1158, 1163-64 (Wash. 2001). In addition, the plaintiff's emotional distress must be "manifested by objective symptoms . . . susceptible to medical diagnosis and proved through medical evidence." *Haubry v. Snow*, 106 Wash. App. 666, 678-679, 31 P.3d 1168, 1193 (Wash. Ct. App. 2001).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS- 24

The existence of a duty of care is a question of law. *Christensen v. Royal Sch. Dist.*, 156 Wn.2d 62, 67, 124 P.3d 283, 286 (Wash. 2005).  The state has no general duty to investigate under the common law.  *Pettis v. State*, 98 Wash. App. 553, 558, 990 P.2d 453, 457 (Wash. Ct. App. 1999).  Consequently, a claim for negligent infliction of emotional distress may only be premised on negligent investigation where the legislature has imposed a duty to investigate upon the defendant by statute.  *Id.*, at 558-60, 990 P.2d at 456-57.

Under Washington law, the Court finds that Detective Gallion and Sergeant Peterson did not owe an actionable duty to Ms. Doe.  As explained above, Washington has consistently refused to impose liability upon police officers for negligent investigation.  It has also refused to recognize a separate cause of action for the destruction of evidence.  It would therefore be inconsistent with the policies of the State of Washington to permit the Plaintiffs to recover for either negligent investigation or the destruction of evidence, even under a theory of negligent infliction of emotional distress.  The Plaintiffs' claim for negligent infliction of emotional distress against the City Defendants will be dismissed.

## IX.  OUTRAGE

The tort of outrage, also referred to as "intentional infliction of emotional distress," has three elements in the state of Washington. *Orin v. Barclay*, 272 F.3d 1207, 1219 (9th Cir. 2001).  First, the plaintiff must demonstrate that the defendant engaged in "extreme and

outrageous" conduct.  Second, the plaintiff must prove that the defendant intentionally or recklessly inflicted emotional distress on the plaintiff.  Third, the plaintiff must prove that the defendant's actions actually resulted in "severe emotional distress."  *Id*.

Conduct is outrageous when it is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grimsby v. Samson*, 85 Wash. 2d 52, 59, 530 P.2d 291, 295 (Wash. 1975).  Whether conduct is sufficiently outrageous to merit relief is a question of fact usually reserved for the jury.  It should only be resolved by the court when "reasonable minds could [not] differ on whether the conduct was sufficiently extreme to result in liability." *Diacomes v. State*, 113 Wash.2d 612, 630, 782 P.2d 1002, 1012-13 (Wash. 1989).  In applying this test, the Court should consider three factors:

> 1) The position occupied by the defendant;
>
> 2) Whether plaintiff was peculiarly susceptible to emotional distress and defendant's knowledge of this fact; and
>
> 3) Whether defendant's conduct may have been privileged under the circumstances.

*Id*. at 59; *Seaman v. Karr*, 114 Wash. App. 665, 685-86, 59 P.3d 701, 710 (Wash. Ct. App. 2002).

The City Defendants argue that the conduct of Detective Gallion and Sergeant Peterson was not outrageous.  Applying the *Diacomes*

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS- 26

factors, the Court finds that reasonable minds could disagree as to whether Detective Gallion and Sergeant Peterson's conduct was sufficiently outrageous to impose liability on the City.  As a recent victim of sexual assault, Ms. Doe was particularly susceptible to emotional distress.  The officers should have been well aware of this fact.  Moreover, the officers occupied positions of power.  Finally, the Defendants have neither argued nor demonstrated that the officers' acts were privileged.  The Plaintiffs' claim for outrage will not be dismissed.

The Court being fully advised,

**IT IS HEREBY ORDERED:**

1. The City Defendants' Motion to Dismiss Federal Causes of Action, **Ct. Rec. 177**, is **GRANTED IN PART** and **DENIED IN PART**.

2. The Plaintiffs may continue to pursue their claim brought under 42 U.S.C. § 1983 to the extent that it is premised upon the alleged sexual assault of February 10, 2006.

3. The Plaintiffs' claim for denial of access to the courts brought under 42 U.S.C. § 1983 is **DISMISSED WITHOUT PREJUDICE.**

4. The Plaintiffs' claim for denial of equal protection under the law brought under 42 U.S.C. § 1983 is **DISMISSED** as against the City of Spokane.  The Plaintiffs may continue to pursue this claim against Detective Gallion and Sergeant Peterson.

5. The City Defendants' Motion to Dismiss Washington Causes of Action, **Ct. Rec. 178**, is **GRANTED IN PART** and **DENIED IN PART**.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS- 27

6. The Plaintiffs' claim for assault and battery is **DISMISSED** as against the City Defendants.  The Plaintiffs may continue to pursue this claim against Mr. Ross.

7. The Plaintiffs' claim for sexual exploitation of a child is **DISMISSED** as against the City Defendants.  The Plaintiffs may continue to pursue this claim against Mr. Ross.

8. The Plaintiffs' claim for negligent supervision is **DISMISSED** to the extent that it is premised upon the actions of Detective Gallion and Sergeant Peterson.  The Plaintiffs may continue to pursue this claim to the extent that it is premised upon the actions of Mr. Ross.

9. The Plaintiffs' claim for negligent investigation is **DISMISSED.**

10. The Plaintiffs' claim for spoilation of evidence is **DISMISSED.**

11. The Plaintiffs may continue to pursue their claim for outrage.

12. The Plaintiffs' claim for negligent infliction of emotional distress is **DISMISSED** as against the City Defendants.  The Plaintiffs may continue to pursue this claim against Mr. Ross.

13. Mr. Ross' Motion to Dismiss Washington Causes of Action, **Ct. Rec. 183,** is **DENIED.**

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS- 28

14. All dispositive motions shall be filed no later than **July 17, 2008** at **5:00 p.m.**

15. Responses shall be filed no later than **5:00 p.m.** on August 1, 2008.

16. Replies shall be filed no later than **5:00 p.m.** on August 8, 2008.

17. If requested, the Court will hear oral argument on any dispositive motions on September 3, 2008 at 9:00 a.m.

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this  9th  day of July, 2008.

____s/ Fred Van Sickle_____
Fred Van Sickle
Senior United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS- 29