UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARY ROE, as Guardian for JANE DOE, | No. CV-06-0357-FVS |
| Plaintiffs, | ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY |
| v. | JUDGMENT, GRANTING CITY DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, GRANTING |
| CITY OF SPOKANE, WASHINGTON, a municipal corporation, including its Fire Department and its Police Department; DANIEL ROSS and JANE DOE ROSS, husband and wife; DETECTIVE NEIL GALLION, SGT. JOE PETERSON; and JOHN AND JANE DOES 1-10, husbands and wives, | IN PART AND DENYING IN PART DEFENDANT ROSS' MOTIONS FOR SUMMARY JUDGMENT, DENYING, AS MOOT, CITY DEFENDANTS' MOTIONS TO STRIKE DECLARATION TESTIMONY, AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO STRIKE DECLARATION TESTIMONY |
| Defendants. | |

**THIS MATTER** came before the Court on September 3, 2008, for a hearing on Defendants' motions for summary judgment and Plaintiffs' motion for partial summary judgment. Also before the Court are the parties' motions to strike declaration testimony. J. Scott Miller appeared on behalf of Plaintiffs. Christian J. Phelps appeared on behalf of Defendants, Daniel and Jane Doe Ross. Rocco N. Treppiedi appeared on behalf of the City of Spokane and the remaining Defendants (collectively, "the City Defendants").

Following this Court's July 9, 2008 ruling on Defendants' motions to dismiss (Ct. Rec. 262), Plaintiffs remaining 42 U.S.C. § 1983 ("Section 1983") claims allege that Defendant, Daniel Ross, under color of law, infringed upon their constitutional rights by sexually

ORDER . . . - 1

assaulting Jane Doe on the night of February 10, 2006, and that the City Defendants' failure to supervise Mr. Ross resulted in the sexual assault.  They further allege that Detective Gallion and Sergeant Peterson ("the officers") deprived Plaintiffs of their right to equal protection under the law by deleting photographs of the alleged sexual assault.  Plaintiffs also continue to seek recovery under state law theories of assault and battery, sexual exploitation of a child, negligent infliction of emotional distress and outrage with respect to Mr. Ross, negligent supervision of Mr. Ross with respect to the City of Spokane ("the City"), and outrage with respect to the conduct of the officers.  The City Defendants move for summary judgment on all of Plaintiffs' remaining claims.  (Ct. Rec. 278, 279).  Mr. Ross joins in the City Defendants' motions for summary judgment and has filed separate motions for summary judgment on all of Plaintiffs' remaining claims against him.  (Ct. Rec. 285, 293, 295).  Plaintiffs have moved for partial summary judgment on their remaining 42 U.S.C. § 1983 claims.  (Ct. Rec. 299).

The Court finds that the City Defendants are entitled to summary judgment on Plaintiffs' remaining federal and state causes of action. While the Court finds that Mr. Ross was acting under color of state law at the time of the events giving rise to this lawsuit, the facts do not show, under federal law, that a City policy or custom or the City's hiring, training or supervision program caused Ms. Doe to be subjected to an alleged sexual assault.  In addition, the officers did not single out Ms. Doe or treat her differently from others similarly situated.  The facts do not demonstrate that the actions of the

ORDER . . . - 2

officers violated Plaintiffs' right to the equal protection under the law.

Under Washington State law, the Court finds that the undisputed facts do not show that the City knew or should have known that Defendant Ross would engage in sexual activity at the fire station. Accordingly, the City is entitled to summary judgment on Plaintiffs' claim of negligent supervision.  Furthermore, while the officer's order to delete Mr. Ross' digital photographs of Ms. Doe may be deemed negligent, the undisputed facts demonstrate that the officers' conduct was designed to protect Ms. Doe and was based on a mistaken belief of the law at the time.  Because the facts demonstrate that the actions of the officers were not "so extreme in degree as to go beyond all possible bounds of decency," summary judgment is proper on Plaintiffs' outrage claim against the officers.

All federal and state claims remaining against the City of Spokane, Detective Neil Gallion, Sergeant Joe Peterson and John and Jane Does, 1-10, husbands and wives, are dismissed.

Plaintiffs may, however, continue to pursue this lawsuit against Mr. Ross.  Whether Ms. Doe was sexually assaulted at the fire station by Mr. Ross is a disputed material issue.  Therefore, Plaintiffs' federal claim with respect to the conduct of Mr. Ross as well as the Washington State law claims against Mr. Ross for assault and battery, negligent infliction of emotional distress and outrage shall continue to trial.  However, Plaintiffs have not established a right to recovery in a civil lawsuit under the Washington State criminal statute for sexual exploitation of a minor when no criminal violations

have been pursued.   Plaintiffs' sexual exploitation of a minor claim
is therefore dismissed.

## BACKGROUND

At the time of the events that gave rise to the present action,
Jane Doe was 16 years old.   The Defendant, Daniel Ross, was a
firefighter employed by the City.   Am. Compl. ¶ 3.2.   On February 10,
2006, Mr. Ross was on duty at Fire Station No. 17.   Ms. Doe went to
Fire Station No. 17 at Mr. Ross' invitation.   Am. Compl. ¶ 3.9.   Mr.
Ross allegedly sexually assaulted Ms. Doe and took explicit
photographs of her.   Am. Compl. ¶¶ 3.13, 3.15.   After the police
interviewed Ms. Doe about the incident, they concluded that she had
consented to the sexual encounter.   Detective Gallion subsequently
directed Mr. Ross to delete the digital photographs.   Am. Compl. ¶¶
3.20-3.25.

## DISCUSSION

**I.   Legal Standard**

Summary judgment is appropriate only if "there is no genuine
issue as to any material fact and . . . the moving party is entitled
to a judgment as a matter of law."   Fed. R. Civ. P. 56(c).   A material
fact is one "that might affect the outcome of the suit under the
governing law[.]"   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,
106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).   A fact may be considered
disputed if the evidence is such that the fact-finder could find that
the fact either existed or did not exist.   *See id.* at 249, 106 S.Ct.
at 2511 ("all that is required is that sufficient evidence supporting
the claimed factual dispute be shown to require a jury . . . to

ORDER . . . - 4

resolve the parties' differing versions of the truth" (quoting *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968))).

Here, the facts upon which the Court relies are either undisputed or established by evidence that permits but one conclusion concerning the fact's existence.

## II. Plaintiffs' Motion to Strike

On August 19, 2008, Plaintiffs moved to strike various portions of declarations submitted by Defendants in support of their motions for summary judgment. (Ct. Rec. 400). The Court has reviewed the substance of the testimony sought to be stricken, the bases provided to strike the testimony and Defendants' responses. Plaintiffs have primarily argued their case with their memorandum in support of their motion and state general disagreement with the facts presented in the declarations. (Ct. Rec. 402). Of the 75 declaration paragraphs Plaintiffs seek to strike, the Court finds that Plaintiffs submit few arguments which have merit. Prior to addressing the pending motions for summary judgment, the Court addresses those portions of declaration testimony which Plaintiffs have provided a valid basis to strike.

### A.    Declaration of Daniel Ross (Ct. Rec. 334)

Plaintiffs fail to present proper grounds for striking any of the contested testimony in this declaration. With regard to ¶ 24 of Mr. Ross' declaration, he is the declarant of the statements and a party to the suit, as is Jane Doe. Therefore, the text messaging

///

ORDER . . . - 5

communications between Mr. Ross and Ms. Doe on February 10, 2006, will not be stricken.

**B.    Declaration of Daniel Ross (Ct. Rec. 368)**

Again, Plaintiffs fail to present proper grounds for striking any of the contested testimony in this declaration.  Plaintiffs merely disagree with the statements made.  This is not a proper basis to strike the testimony.

**C.    Declaration of D.P. Van Blaricom (Ct. Rec. 340)**

Mr. Van Blaricom's testimony provides his opinion based upon his personal knowledge.  No valid basis is given to strike the statements made by Mr. Van Blaricom.

**D.    Declaration of Detective Gallion (Ct. Rec. 349)**

All statements made by Detective Gallion regarding Jane Doe's prior cases involving sex (¶¶ 7, 11-15) appear to be in violation of this Court's protective order prohibiting such evidence (Ct. Rec. 166).  Any statements disclosing information in violation of the Court's January 31, 2008 protective order shall be stricken, and those statements will not be considered by the Court for purposes of the instant motions for summary judgment.  However, the remainder of the contested testimony in this declaration is merely statements of what Detective Gallion heard, saw and learned as he investigated the case. This testimony is based on his personal knowledge, and Plaintiffs have not provided valid grounds to strike the testimony.

**E.    Declaration of Detective Gallion (Ct. Rec. 383)**

Detective Gallion's testimony regarding what he heard at the deposition (portions of ¶¶ 11-13) shall be stricken and disregarded

for purposes of the instant motions for summary judgment.  In addition, ¶ 15, which discusses what Jane Doe told Officer Hager and Det. Kendall, does not appear to be based on Detective Gallion's personal knowledge and shall be stricken.  Finally, part of ¶ 22 appears to be in violation of this Court's protective order prohibiting evidence related to Ms. Doe's sexual history (Ct. Rec. 166) and shall be stricken and disregarded.

### F.   Declaration of Detective Kendall (Ct. Rec. 366)

Exhibit A (Adultfriendfinder.com website in March 2006) is immaterial to this case.  The exhibit is stricken.  The remainder of Detective Kendall's testimony is based on his personal knowledge and no proper basis has been provided for it to be stricken.

### G.   Declaration of Officer Hager (Ct. Rec. 367)

Plaintiffs fail to present appropriate grounds for striking any of the contested testimony contained in this declaration.  Plaintiffs simply disagree with Officer Hager's testimony and use their memorandum as a vehicle to argue their case.

### III. Cross-Motions for Summary Judgment on Federal Claims

### A.   Defendant Ross

Plaintiffs seek to establish Section 1983 liability against Mr. Ross for allegedly using his position as a firefighter to lure Ms. Doe to the fire station on February 10, 2006, and thereafter subject her to a sexual assault.  Defendant Ross argues that since he was not acting under color of law when he had consensual sex with Ms. Doe, her Section 1983 claim cannot stand.  (Ct. Rec. 307 at 7-9).

///

In the Ninth Circuit, a plaintiff must prove two elements to state a cause of action under Section 1983: "1) that the Defendants acted under color of state law; and 2) that the Defendants caused them to be deprived of a right secured by the Constitution and laws of the United States." *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997).

### 1.    Acting Under Color of Law

"There is no 'rigid formula' for determining whether a state or local law official is acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006).  "Rather, it is a process of 'sifting facts and weighing circumstances' which must lead us to a correct determination." *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000) (citations omitted).

The acts of a public official are not automatically considered to be under color of law merely because he or she committed the act while on duty and in uniform. *Van Ort v. Estate of Michael Stanewich*, 92 F.3d 831, 838 (9th Cir. 1996) (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990)).  Instead, a government employee "acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *McDade*, 223 F.3d at 1140.  A public employee may also act under color of law when he or she takes an action in pursuit of a government objective, pretends to act under color of law, or uses his or her government position to "exert influence and physical control." *Van Ort*, 92 F.3d at 838.

///

ORDER . . . - 8

The Ninth Circuit has identified three requirements that must be satisfied in order to demonstrate that an off-duty police officer acted under color of law:

> 1) The action at issue was 'performed while the officer is acting, purporting, or pretending to act in the performance of his or her official duties';
>
> 2) Second, the officer's pretense of acting in the performance of his duties must have had the purpose and effect of influencing the behavior of others; and
>
> 3) The action at issue was related in some meaningful way either to the officer's governmental status or to the performance of his duties.

*Anderson*, 451 F.3d at 1068-69 (citing *McDade*, 223 F.3d at 1140)).

The Ninth Circuit has not explicitly applied these requirements to the acts of public employees who were on duty at the time of the conduct at issue. However, the Ninth Circuit found that an on-duty employee acted under color of law when he used his position as a refugee counselor to exert influence over individuals who contacted him for assistance in obtaining employment. *Vang v. Toyed*, 944 F.2d 476, 480 (9th Cir. 1991) (refugee counselor accused of sexually assaulting the immigrants he was assigned to advise found to have acted under color of law). The Ninth Circuit also found that an employee of a District Attorney's Office acted under color of law when she accessed a government database during working hours using a computer and a password issued by her employer. *McDade,* 223 F.3d at 1140. The *McDade* court explained, "[b]ecause Ms. West's status as a state employee enabled her to access the information, she invoked the powers of her office to accomplish the offensive act." *Id.*

///

ORDER . . . - 9

Mr. Ross was both on-duty and in uniform at the time of the sexual contact at the fire station.  Although Defendants dispute that Mr. Ross utilized his status as a firefighter to accomplish the sexual contact, Plaintiffs allege, "Jane Doe's purpose was to meet Defendant Ross in person for the first time and have a tour of Fire Station No. 17."  Am. Compl. ¶ 3.10.  Plaintiffs further allege, "Jane Doe recognized that Defendant Ross was a person with special authority because of his position as a uniformed firefighter, which reduced, interfered with and/or prevented her capacity to resist Defendant Ross' sexual assault."  *Id.* ¶ 3.16.  In any event, it is undisputed that Mr. Ross was in uniform, on duty, and at the fire station when he communicated with Ms. Doe and invited her to meet him at the fire station that day.

Based on the facts presented, it is apparent that Mr. Ross invoked the powers of his position to promote and carry out the sexual conduct.  Mr. Ross thus acted under color of law at the time of the events that give rise to the present action.

### 2.    Deprived Ms. Doe of a Constitutional Right

Regardless of the Court's finding that Mr. Ross was acting under color of law during the events underlying the instant lawsuit, what transpired at the fire station on February 10, 2006, is clearly a disputed material issue.  Plaintiffs allege and present evidence that the conduct of Defendant Ross was without Jane Doe's consent and thus a sexual assault.  Mr. Ross contends and presents evidence that the encounter was consensual sex.  It is thus apparent that an issue of fact exists for the jury to decide.

ORDER . . . - 10

In fact, despite moving for summary judgment on the issue, the responses by both Plaintiffs and Defendant Ross to the pending motions for summary judgment agree that this is an issue for the jury to determine.  Plaintiffs concede in their response that "[i]t is clear . . . that Plaintiffs' §1983 claims against Det. Gallion, Sgt. Peterson and Daniel Ross should not be decided on summary judgment, but are appropriately supported and must go to trial for determination by the trier of fact." (Ct. Rec. 325 at 18).  Defendant Ross agrees that "[w]hether [Ms. Doe] was assaulted, as she now claims, is a disputed material fact." (Ct. Rec. 320 at 5).  Nevertheless, as indicated above, the Court finds that facts concerning the events which occurred at the fire station are clearly disputed, material facts and that summary judgment is thus not appropriate on Plaintiffs' Section 1983 claim with respect to the conduct of Defendant Ross.

**B.   The City**

Plaintiffs contend that the City is liable under Section 1983 because the City's failure to supervise or train Mr. Ross resulted in the alleged sexual assault of Ms. Doe.  The City Defendants argue they are not liable, as a matter of law, under Section 1983.

As noted above, in the Ninth Circuit, a plaintiff must prove two elements to state a cause of action under Section 1983: "1) that the Defendants acted under color of state law; and 2) that the Defendants caused them to be deprived of a right secured by the Constitution and laws of the United States." *Johnson*, 113 F.3d at 1117.

As indicated above, while the City Defendants assert otherwise (Ct. Rec. 282 at 10-14), this Court concludes that the facts and law

ORDER . . . - 11

demonstrate that Mr. Ross was acting under color of law in this case. *Supra*.  Given the Court's conclusions, below, the City Defendants are not prejudiced by this finding.

### 1.  Vicarious Liability

The City Defendants correctly assert that, under federal law, vicarious liability does not attach in claims made under 42 U.S.C. § 1983.  (Ct. Rec. 282 at 8).

A local government body, such as a municipality, can not be held liable under Section 1983 for the unconstitutional acts of its officers or employees under the theory of respondent superior.  *Monell v. New York Dep't of Social Serv.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035-36, 56 L. Ed. 2d 611, 635 (1978).  Rather, a municipality may only be held liable under Section 1983 if the plaintiff's injuries are traceable to one of the municipality's policies or customs.  *Id.*  "A failure to train or supervise can amount to a 'policy or custom' sufficient to impose liability on [a local government]."  *Anderson*, 451 F.3d at 1070 (citing *City of Canton v. Harris*, 489 U.S. 378, 389-90, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).

Accordingly, as a matter of law, the City is not liable under Section 1983 for the acts of Mr. Ross under a vicarious liability theory.

### 2.  Policy or Custom

Plaintiffs have alleged that the City's failure to supervise Mr. Ross resulted in a sexual assault upon Ms. Doe.  The City asserts that Plaintiffs cannot show the existence of a policy or custom that caused Ms. Doe's alleged constitutional deprivation, that inaction by the

ORDER . . . - 12

City amounted to "deliberate indifference", or that a City policy or custom was the "moving force" behind the alleged constitutional deprivation.  (Ct. Rec. 282 at 14-22).

To establish liability against the City, Plaintiffs must show that (1) an employee of the City violated Plaintiffs' rights; (2) the City had customs or policies that amounted to deliberate indifference; and (3) these policies were the moving force behind the employee's violation of Plaintiffs' constitutional rights, in the sense that the City could have prevented the violation with an appropriate policy. *Gibson v. County of Washoe*, 290 F.3d 1175, 1194 (9th Cir. 2002).

A plaintiff may recover from a municipality under section 1983 if her injury was inflicted under a city policy, regulation, custom, or usage.  The basic rule of liability is "local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

A municipality's failure to properly hire, train or supervise an employee who has caused a constitutional violation can be the basis

ORDER . . . - 13

for § 1983 liability where the inaction amounts to the deliberate indifference to the rights of persons with whom the employee comes into contact. *Canton v. Harris*, 489 U.S. 378, 388 (1989) (inadequate police medical training representing a city policy may serve as basis for § 1983 case). "[F]or liability to attach in this circumstance the identified deficiency in a [local governmental entity's] training program must be closely related to the ultimate injury." *Id.* at 391. In other words, a plaintiff must show that his or her constitutional "injury would have been avoided" had the governmental entity properly trained its employees. *Oviatt v. Pearce,* 954 F.2d 1470, 1474 (9th Cir. 1992) (citing *City of Canton,* 489 U.S. at 389-91).

Mr. Ross' alleged actions are entirely inconsistent with his training as a fire fighter for the City. It was against City policy for Mr. Ross to view a pornographic website, have sex in the fire station or commit an assault. Mr. Ross' alleged conduct was contrary to City policy and procedure. The City could not have prevented the alleged assault with an appropriate policy.

Furthermore, there has been no showing of deficiencies with the hiring, training or supervision of Mr. Ross. Mr. Ross' history did not suggest he had a propensity to commit a sexual assault. Mr. Ross had been a satisfactory employee for approximately 15 years. He did not have a disciplinary or behavioral record which would indicate a concern that his behavior would be violative of City policy and procedure.

While Plaintiffs allege that the City failed to adequately supervise and train Mr. Ross by allowing him to assault Ms. Doe in a

City fire station, there was no way for the City to know about Mr. Ross' relationship with Ms. Doe or to foresee that Mr. Ross would violate City policy by having a sexual encounter at a fire station. All of Mr. Ross' communications with Ms. Doe were made on his personal equipment. Mr. Ross never contacted Ms. Doe through any City computer or internet connection, nor did Ms. Doe contact Mr. Ross in that manner. It is undisputed that Mr. Ross inappropriately viewed a pornographic website a number of times while on duty at the fire station. However, even if the City had prior knowledge that Mr. Ross was viewing the Adultfriendfinder.com website while on duty, Plaintiffs have not shown a nexus between the viewing of this website and an inclination to commit a sexual assault.

Lastly, in *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-824, 105 S.Ct. 2427 (1985) the Supreme Court held that a municipal policy sufficient to impose liability under § 1983 could not be established by a single isolated instance of misconduct by a city employee. The single incident alleged in this case, absent other evidence, is insufficient to support liability against the City.

Accordingly, the Court finds, as a matter of law, that neither a City policy or custom, nor the City's hiring, training or supervision program caused Ms. Doe to be subjected to the alleged sexual assault. The City is entitled to summary judgment on Plaintiffs' remaining section 1983 claim. Plaintiffs' motion for summary judgment on this claim is thus denied.

///

///

ORDER . . . - 15

**C.    The Officers**

Plaintiffs' remaining claim for Section 1983 liability on the part of the officers alleges that the deletion of digital photographs by the officers deprived Plaintiffs of the equal protection under the law.  The parties have filed cross-motions for summary judgment on this issue.  However, Plaintiffs again appear to abandon their motion by conceding in their response to the City Defendants' motion that "[i]t is clear . . . that Plaintiffs' §1983 claims against Det. Gallion, Sgt. Peterson and Daniel Ross should not be decided on summary judgment, but are appropriately supported and must go to trial for determination by the trier of fact."  (Ct. Rec. 325 at 18).

The equal protection clause of the Fourteenth Amendment serves to "secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074-75, 141 L. Ed. 2d 1060, 1063 (2000).  Consistent with this principle, an individual may sue for denial of equal protection as a "class of one."  *Id*.  In order to succeed upon such a claim, a plaintiff must prove that he or she has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *The Fishing Co. of Ala. v. United States*, 195 F. Supp. 2d 1239, 1254 (W.D. Wash. 2002) (internal citation and quotation marks omitted).

Plaintiffs argue that the officers deprived Ms. Doe of equal protection under the law by intentionally treating her differently

from other similarly situated crime victims.  The City Defendants
contend that the evidence does not support a claim that Plaintiffs
were intentionally treated differently from others similarly situated
and that there is no rational basis for the alleged difference in
treatment.  (Ct. Rec. 282 at 23-24).

It appears that the officers had a rational basis for directing
that the pictures be deleted in this case.  As explained in Det.
Gallion declaration, he directed Mr. Ross to delete the pictures in
order to protect Ms. Doe from the dissemination of the pictures.  Det.
Gallion's actions were taken to prevent the photographs from being
shown to third parties or from being published on the internet.

In any event, the facts and evidence demonstrate that Plaintiffs
were not intentionally treated differently from others similarly
situated.  Det. Gallion and Sgt. Peterson were responsible for
investigating Ms. Doe's reported rape.  After the officers interviewed
Ms. Doe about the incident, they concluded that she had consented to
the sexual encounter.  After further investigating the alleged rape by
contacting Mr. Ross, Det. Gallion subsequently directed Mr. Ross to
delete photographs Mr. Ross admitted taking during the sexual
encounter.  Am. Compl. ¶¶ 3.20-3.25.

The facts demonstrate that deletion of the pictures was based on
a mistaken belief of the law.  Negligent destruction of the evidence
is not enough to support a claim under § 1983.  *Harrell*, 169 F.3d at
431-432.  As asserted by the City Defendants, Det. Gallion asked Mr.
Ross to delete the pictures based on a mistaken belief that he could
not seize the camera.  He did not believe he had probable cause to

ORDER . . . - 17

seize the photos because he believed the photos were not evidence of a crime. In fact, Plaintiffs agree that the officers had "an inaccurate and incomplete understanding of Washington statutes regarding sexual exploitation of a minor . . . ." (Ct. Rec. 325 at 16). While Plaintiffs assert that any reasonable police officer is on notice that concealing the commission of a crime violates the victim's constitutional rights, it is undisputed that the officers were not aware that the digital photographs were evidence of a crime and subject to seizure.

Regardless of whom the alleged victim was at the time, Det. Gallion's actions would have been the same. Directing that the digital photographs be deleted was consistent with Det. Gallion's understanding of the law at that time, not based on the identity of the alleged victim. Det. Gallion did not single out Ms. Doe.

The two cases cited by Plaintiffs in support of their argument regarding violation of the equal protection clause, *Harrell v. Cook*, 169 F.3d 428 (7th Cir. 1999) and *Delew v. Wagner*, 143 F.3d 1219 (9th Cir. 1998), are distinguishable from the instant action. Both cases required the plaintiff to establish that the officer's destruction of evidence was part of a conspiracy to deny the plaintiff access to the courts. There has been no evidence presented which shows the officers in this case conspired to deny Ms. Doe access to the court. In fact, it is undisputed that the officers immediately informed everyone, including Plaintiffs, that they directed Mr. Ross to delete the digital photographs. The officers did not conceal or misrepresent their actions in this case. Moreover, the deletion of the photographs

ORDER . . . - 18

has not resulted in a denial of access to the courts.  (Ct. Rec. 262 at 15-16).

The undisputed facts demonstrate that the actions of the officers were not in violation of Ms. Doe's right to equal protection. Plaintiffs' motion for partial summary judgment with respect to this claim is denied, and the City Defendants' motion for summary judgment on the § 1983 claim against the officers is granted.

**IV.  City Defendants' Motion for Summary Judgment on State Claims**

   **A.   The City**

      **1.   Vicarious Liability**

The Court's ruling on Defendants' motions to dismiss held that "it is clear that Mr. Ross was not acting within the scope of his employment at the time that he allegedly assaulted Ms. Doe."  (Ct. Rec. 262 at 19); *See C.J.C. v. Corp. of Catholic Bishop of Yakima*, 138 Wn.2d 699, 718-19, 985 P.2d 262, 272 (Wash. 1999) (holding churches could not be held liable for acts of sexual assault committed by priests); *Niece v. Elmview Group Home*, 131 Wn.2d 39, 58, 929 P.2d 420, 431 (1997) (holding nursing home not liable for sexual assault of resident by an employee); *Thompson*, 41 Wn. App. at 554, 860 P.2d at 1058 (holding clinic not liable for sexual assault of patient by a doctor); *Blenheim v. Dawson & Hall, Ltd.*, 35 Wn. App. 435, 440, 667 P.2d 125, 129 (Wash. Ct. App. 1983) (holding employer not liable for sexual assault of entertainer hired to perform at company Christmas party).

Like the defendants in *C.J.C., Niece, Thompson,* and *Blenheim*, Mr. Ross acted in pursuit of his own sexual gratification rather than in

ORDER . . . - 19

an attempt to fulfill the functions of his job.  The Court thus determined that under the law of the state of Washington the City could not be held liable for the tortious actions of Mr. Ross under a theory of respondeat superior.  (Ct. Rec. 262 at 19).  That finding is reaffirmed herein.  Accordingly, as a matter of law, the City is not liable for the state law tort claims regarding Mr. Ross under a theory of respondeat superior.

### 2.    Negligent Supervision of Defendant Ross

The City Defendants contend that summary judgment is proper with respect to Plaintiffs' cause of action against the City Defendants for the failure to properly supervise Mr. Ross.  The City Defendants argue that there can be no failure to supervise an employee's behavior when no one else is aware of the employee's actions which are intentionally designed to avoid detection.  (Ct. Rec. 281 at 12).  Plaintiffs allege that the City Defendants' failure to supervise Mr. Ross was a proximate cause of the alleged sexual assault.  The undersigned does not agree.

An employer has a limited duty to foreseeable victims to "prevent the tasks, premises, or instrumentalities entrusted to an employee from endangering others." *Niece*, 131 Wash.2d at 48, 929 P.2d at 426.  Consequently, an employer may be held liable for the negligent acts of an employee acting outside the scope of his or her employment under a negligent supervision theory when two elements are present.  First, the plaintiff must show that the employer knew, or, through the exercise of reasonable care, should have known that the employee was unfit.  Second, the plaintiff must show that failing to supervise the

employee was a proximate cause of the plaintiff's injuries.  *Betty Y. v. Al-hellou*, 98 Wash. App. 146, 149 (Wash. Ct. App. 1999); *Crisman v. Pierce County Fire Prot. Dist. No. 21*, 115 Wash. App. 16, 20 (2002).

Plaintiffs argue that the City should have known about Mr. Ross' alleged dangerous tendencies or predatory practices.  However, the facts demonstrate that Mr. Ross did not have a history which would suggest he may be sexually assaultive.  Mr. Ross had been a satisfactory employee for approximately 15 years.  He had been disciplined twice during that time, for arguing with his wife outside a fire station and for failing to report to duty, but he did not have any disciplinary or behavioral record to indicate a concern about his behavior at a fire station or otherwise.  In addition, all of Mr. Ross' communications with Ms. Doe were made on his personal equipment. Mr. Ross never contacted Ms. Doe through any City computer or internet connection, nor did Ms. Doe contact Mr. Ross in that manner.  There was no way for the City to know about the private communications between Mr. Ross and Ms. Doe or to foresee that Mr. Ross would violate City policy by having a sexual encounter at a fire station.  Even if the City had prior knowledge that Mr. Ross inappropriately viewed a pornographic website a number of times while on duty at the fire station, Plaintiffs have not demonstrated a nexus between the viewing of a pornographic website and the perpetration of a sexual assault.

Plaintiffs fail, as a matter of law, to establish the knowledge element of this theory.  There has been no evidence presented to establish that the City knew or should have known Mr. Ross would engage in sexual behavior at the fire station.  Consequently, the

ORDER . . . - 21

Court finds that the City is entitled to summary judgment on Plaintiffs' claim of negligent supervision.

### B.  The Officers

The City Defendants additionally move for summary judgment on Plaintiffs' claim that the officers' conduct was sufficiently outrageous to impose liability on the City.  (Ct. Rec. 262 at 27). While the City Defendants concede that "[t]he question of whether certain conduct is sufficiently outrageous is ordinarily a question for the jury," *Phillips v. Hardwick*, 29 Wn. App. 382, 327 (1981), they argue that if reasonable minds could not differ on whether the conduct has been sufficiently extreme and outrageous to result in liability, summary judgment is proper.  (Ct. Rec. 282 at 14).  The City Defendants assert that the officers' conduct was designed to protect, not harm; therefore, the conduct was hardly outrageous.  In addition, they argue that the deletion of the pictures did not create emotional distress, let alone the "severe" distress required by law.  (Ct. Rec. 282 at 13-17).

The tort of outrage has three elements in the state of Washington.  *Orin v. Barclay*, 272 F.3d 1207, 1219 (9th Cir. 2001). First, the plaintiff must demonstrate that the defendant engaged in "extreme and outrageous" conduct.  Second, the plaintiff must prove that the defendant intentionally or recklessly inflicted emotional distress on the plaintiff.  Third, the plaintiff must prove that the defendant's actions actually resulted in "severe emotional distress." *Id*.  Conduct is outrageous when it is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

ORDER . . . - 22

atrocious, and utterly intolerable in a civilized community." *Grimsby v. Samson*, 85 Wash. 2d 52, 59, 530 P.2d 291, 295 (Wash. 1975).

The facts demonstrate that the officers' direction to Mr. Ross to delete the pictures was based on a mistaken belief of the law at the time. Plaintiffs do not dispute that the officers had "an inaccurate and incomplete understanding of Washington statutes regarding sexual exploitation of a minor . . . ." (Ct. Rec. 325 at 16). Although Plaintiffs assert that the officers' outrageous conduct consists of concealing the commission of a crime by deleting the pictures, it is undisputed that the officers were not aware that the digital pictures were evidence of a crime and thus subject to seizure. Plaintiffs are not able to show more than negligence on behalf of the officers. Mere negligence is not enough to establish outrage. *Fisher v. State ex rel. Dept. of Health*, 125 Wn.App. 869, 881, 106 P.3d 836, 841 (2005) (trial court properly dismissed plaintiff's claim for outrage where evidence revealed, at worst, negligence on the part of government agents).

Furthermore, although there is evidence of Ms. Doe's subsequent emotional distress, Plaintiffs have not established a link between Ms. Doe's alleged emotional symptoms and the actions of the officers or that the symptoms stemming from Dr. Estelle's provisional diagnosis of post traumatic stress disorder are sufficiently severe. Accordingly, satisfaction of the second and third prongs of the tort of outrage (showing an infliction of severe emotional distress) is tenuous at best.

///

ORDER . . . - 23

Nevertheless, the undisputed facts demonstrate that the conduct of Detective Gallion and Sergeant Peterson was not outrageous.  The Court finds that Plaintiffs' outrage claim fails as a matter of law. The City Defendant's motion for summary judgment on Plaintiffs' outrage claim against the officers is granted.

**V.   Defendant Ross' Motion for Summary Judgment on State Claims**

**A.   Assault and Battery**

Defendant Ross argues that since the pleadings demonstrate that Ms. Doe did nothing to verbally or physically indicate a lack of consent to the sexual contact, Plaintiffs are not, as a matter of law, able to establish a viable claim against him for assault and battery. (Ct. Rec. 311 at 10-11).  Plaintiffs allege that the actions of Defendant Ross at the fire station on February 10, 2006, were not consented to by Ms. Doe and thus constituted an assault and battery. As previously indicated, what transpired at the fire station on February 10, 2006, is clearly a disputed material issue.  Summary judgment is therefore not proper on Plaintiffs' state law assault and battery claim.  Defendant Ross' motion for summary judgment on this claim is denied.

**B.   Sexual Exploitation of a Minor**

In addition to claiming that Plaintiffs have no right to recovery under the criminal statute, Title 9.68A RCW, Defendant Ross asserts that he is not liable, as a matter of law, under this theory because at the time of the alleged offense he was not aware that Ms. Doe was a minor.  (Ct. Rec. 311 at 11).  Plaintiffs assert that the acts of Mr.

///

ORDER . . . - 24

Ross constitute a violation of Title 9.68A RCW for the sexual exploitation of a child.

The crime of sexual exploitation of a minor, a class B felony in the state of Washington, is established by showing that a person (1) compels a minor by threat or force to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance, (2) aids, invites, employs, authorizes, or causes a minor to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance, or (3) being a parent, legal guardian, or person having custody or control of a minor, permits the minor to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance.  RCW 9.68A.040.

No case law has been revealed which permits recovery in a civil lawsuit under the criminal statute RCW 9.68A where no criminal violations have been pursued, and Plaintiffs have failed to provide argument or authority as to how the criminal statute is otherwise applicable in this matter.  While the statute provides that "[a] minor prevailing in a civil action arising from **violation of this chapter** is entitled to recover the costs of the suit," RCW 9.68A.130 (emphasis added), it is undisputed that there has been no criminal charges or violation resulting from the facts underlying this lawsuit. Accordingly, although it appears that the statute contemplates a right to recovery in a civil action for a violation of the criminal statute, Plaintiffs have not established a right to recovery on a claim of sexual exploitation of a minor based on the facts of this case.

Defendant Ross' motion for summary judgment on Plaintiffs' sexual

exploitation of a minor claim is granted and the claim is dismissed.

### C.    Negligent Infliction of Emotional Distress

Defendant Ross asserts he is entitled to summary judgment on

Plaintiffs' negligent infliction of emotional distress claim because

he only owed Ms. Doe a duty of reasonable care and Ms. Doe is not able

to prove emotional distress or injury through objective symptoms and

medical evidence.  (Ct. Rec. 311 at 6-8).

The tort of negligent infliction of emotional distress has five

elements in the state of Washington.  First, the plaintiff must prove

the four traditional elements of negligence: "duty, breach, proximate

cause, and damage or injury."  *Snyder v. Med. Serv. Corp.*, 125 Wash.

2d 233, 243, 35 P.3d 1158, 1163-64 (Wash. 2001).  In addition, the

plaintiff's emotional distress must be "manifested by objective

symptoms . . . susceptible to medical diagnosis and proved through

medical evidence."  *Haubry v. Snow*, 106 Wash. App. 666, 678-679, 31

P.3d 1168, 1193 (Wash. Ct. App. 2001).

The existence of a duty of care is a question of law.

*Christensen v. Royal Sch. Dist.*, 156 Wn.2d 62, 67, 124 P.3d 283, 286

(Wash. 2005).  As noted by Defendant Ross, and agreed to by Plaintiffs

and this Court, Mr. Ross owed a duty of reasonable care to Ms. Doe.

(Ct. Rec. 311 at 6; Ct. Rec. 323 at 5-6).  However, there is a clear

disputed issue of fact with regard to the breach of the duty owed to

Ms. Doe.  As indicated above, whether Ms. Doe was sexually assaulted

is a disputed material issue that must be decided by a trier of fact.

///

ORDER . . . - 26

Mr. Ross argues that regardless of a breach of a duty owed to Plaintiff, objective evidence of Ms. Doe's subsequent emotional distress is lacking.  Nevertheless, Ms. Doe has received psychological counseling.  On May 6, 2006, Lisa Estelle, Psy.D., made a provisional diagnosis of post traumatic stress disorder.  Whether the actions of Defendant Ross caused the harm identified by Dr. Estelle and the extent of that harm is a material issue for the jury to decide with respect to this claim.  Accordingly, summary judgment on Plaintiffs' claim of negligent infliction of emotional distress is inappropriate.

**D.   Outrage**

Defendant Ross argues he is entitled to summary judgment on Plaintiffs' outrage cause of action because the facts in this case demonstrate that the conduct of Mr. Ross was not outrageous.  (Ct. Rec. 311 at 9).  He asserts that the totality of the evidence indicates that the sexual contact between Mr. Ross and Ms. Doe was consensual.  (*Id.*)  This is a question for the jury to decide.

There is a disputed issue of material fact with respect to the sexual contact between Mr. Ross and Ms. Doe.  If found by a jury to be a sexual assault on a 16 year old by an on-duty firefighter in a fire station, reasonable minds could disagree as to whether the totality of the circumstances warrant a conclusion that Defendant Ross' conduct was sufficiently outrageous to establish liability.  In addition, as noted above, while there is evidence of Ms. Doe's subsequent emotional distress, whether the actions of Defendant Ross caused the harm identified by Dr. Estelle and the extent of that harm is a material issue for the jury to decide.  The Court thus finds it is not proper

ORDER . . . - 27

to grant Defendant Ross' motion for summary judgment on Plaintiffs' outrage claim.

## **CONCLUSION**

The Court being fully advised, **IT IS HEREBY ORDERED**:

1.  Plaintiffs' Motion for Partial Summary Judgment Regarding 42 U.S.C. § 1983 (**Ct. Rec. 299**) is **DENIED.**

2.  The City Defendants' Motion for Summary Judgment to Dismiss Remaining Federal Causes of Action (**Ct. Rec. 279**) is **GRANTED.**

3.  The City Defendants' Motion for Summary Judgment to Dismiss Remaining State Causes of Action (**Ct. Rec. 278**) is **GRANTED.**

4.  Defendant Ross' Motion for Summary Judgment to Dismiss Remaining Federal Causes of Action (**Ct. Rec. 293**) is **DENIED.**

5.  Defendant Ross' Motion for Summary Judgment to Dismiss Remaining State Causes of Action (**Ct. Rec. 295**) is **GRANTED IN PART** and **DENIED IN PART.**

6.  Defendant Ross' Motion for Summary Judgment to Dismiss Remaining State Causes of Action (**Ct. Rec. 285**) is **DENIED as duplicative of Ct. Rec. 295**.

7.  Plaintiffs may continue to pursue their federal claim under 42 U.S.C. § 1983 with respect to Defendant Ross.

8.  Plaintiff may additionally continue to pursue their state law claims for assault and battery, negligent infliction of emotional distress and outrage with respect to Defendant Ross.

9.  Plaintiffs' state law claim against Defendant Ross for sexual exploitation of a child is **DISMISSED**.

///

ORDER . . . - 28

10. All remaining state and federal claims against the City of Spokane, Detective Neil Gallion, Sergeant Joe Peterson and John and Jane Does, 1-10, husbands and wives, are **DISMISSED**.  **The District Court Executive shall enter Judgment in favor of these Defendants.**

11.  The City Defendants' Motion to Strike the Declaration of Frank J. Connelly (**Ct. Rec. 336**) is **DENIED as moot**.

12.  The City Defendants' Motion to Strike Portions of the Declaration of Jane Doe (**Ct. Rec. 369**) is **DENIED as moot**.

13.  Plaintiffs' Motion to Strike Portions of Defendants' Declarations (**Ct. Rec. 400**) is **GRANTED in part and DENIED in part**.

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to file this order, enter judgment accordingly and furnish copies to counsel.

**DATED** this ___5th___ day of September, 2008.


_____S/Fred Van Sickle_____
Fred Van Sickle
Senior United States District Judge

ORDER . . . - 29